### Jacob Brown *v.* The State.

1. Charge of the Court. — A correct instruction to the jury cannot be impugned, on appeal, because the correlated evidence was inconclusive.

2. Same. — Defendant was indicted as a principal offender, and the evidence tended to incriminate him, not only as a principal, but as an accomplice. *Held*, not error to refuse a requested instruction which assumed that the evidence only inculpated him as an accomplice.

3. Same. — When a requested instruction has already been given in the charge of the court, it is not error to refuse it.

4. Same — Evidence. — In a trial for cattle-theft, the State's evidence tended to implicate the defendant in the theft of other animals besides the one described in the indictment, and the *res gestæ* involved them all alike. The court below apprised the jury that in so far as the evidence tended to prove that the other animals were stolen, it was excluded, but refused an instruction not to consider any evidence relating to any of the animals except the one in question. *Held*, that there is no error to the prejudice of the defendant; and intimated that the excluded proof was competent to show guilty knowledge and intent.

Appeal from the District Court of Travis. Tried below before the Hon. E. B. Turner.

The indictment charged the appellant, and also Bud Plumley and A. J. Rhoades, with the theft of a heifer yearling, the property of Hardin Walsh. The appellant, who was separately tried, was found guilty, and a term of two years in the penitentiary was assessed as his punishment. Bud Plumley had been previously convicted, and his case, on appeal, is reported in 8 Texas Ct. App. 529.

Appellant and Rhoades had married sisters, who were aunts of Bud Plumley. It appears by the evidence that the cattle transaction in question was the first venture in a copartnership in butchering. Two or three other animals besides Walsh's heifer were penned at the same time, and for the avowed purpose of slaughtering them. The opinion states such matters as have a direct relevancy to the rulings.

*Carleton & Morris*, and *Sheeks & Sneed*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J.   After the judge had given to the jury his general charge, counsel for the defendant requested that four special instructions be also given to the jury.   One of the four was given as requested, but the court refused to give the other three.   The special instruction given at the defendant's request is as follows: "If you believe from the testimony that the defendant took possession of the heifer charged to be stolen, under the belief that Bud Plumley had a right to control said animal, and took possession of such animal at the request of said Bud Plumley, then you will find the defendant not guilty."

The first special instruction refused was to this effect: "If you find that the defendant was not present at the commission of the offence charged in the indictment, if any offence was committed, although you should find that before the act was done the defendant advised, or commanded, or encouraged others to commit the offence, or agreed with the principal offender or offenders to aid in committing the offence, or promised any reward, favor, or other inducement, these facts would not make him a principal offender as charged in the indictment, and you should acquit him."

The second charge refused was to this effect: "If you believe from the evidence that J. T. Plumley represented himself to be authorized by Hardin Walsh, the owner, to get up the heifer alleged in the indictment to have been stolen, and put it in a pen, and that said Plumley authorized the said defendant to get up the said heifer and put it in a pen, and that the defendant, believing that said Plumley had the authority which he represented himself to have, did get up the said heifer and put it in a pen, then you will find the defendant not guilty, unless you find that he went

further, and you find, in addition to the other facts which you have been charged by the court are necessary to constitute theft, that the defendant actually appropriated the heifer alleged to have been stolen.''

The third and remaining charge refused was the following: ''The defendant is on trial for the theft of the yearling belonging to Walsh, and the jury will not take into consideration any evidence regarding any of the cattle except the yearling of Hardin Walsh.'' The judge makes the following explanation for refusing to give the last special charge: '' I had told the jury that the evidence tending to show that other cattle were stolen was excluded, and the State did not seek to show it by the evidence; and yet the others were there, and part of the evidence, and I could not do more than tell the jury that the State did not seek to show the others to have been stolen.''

The court, in the general charge, besides instructing the jury as to the ingredients of the crime of theft as that offence is defined by statute, and sufficiently as to the law of principal offenders, so far as applicable to the testimony, and giving appropriate instructions as to the presumption of innocence and the reasonable doubt, apparently with the view of embracing one phase of the evidence, gave to the jury this instruction: '' You are the exclusive judges of the weight of the evidence and of the credibility of the witnesses. As there are other persons named in the indictment as defendants, you will name the defendant Jacob Brown in your verdict. A fraudulent intent is a necessary ingredient in the offence of theft, and if you believe that the defendant took the heifer into possession in good faith, believing that he had authority to do so from J. T. Plumley, and did not intend to steal her, and only intended to place her in a pen or pasture for Walsh, as directed by Mr. Plumley, then you should acquit him. On the other hand, if you find from the evidence that defendant by himself, or in connection with others, with a common intent to de-

prive the owner of the heifer and to appropriate her to themselves, took the heifer into possession and drove her off, with the fraudulent intent of depriving Walsh of the value of the heifer, and to convert her to his and their benefit, or, in other words, to steal her, and that was the motive and intention in taking her, then you would be justified in finding a verdict of guilty of theft. If you do not find the defendant Jacob Brown guilty, you will say not guilty."

The features of the evidence necessary to be met by the charge of the court arose from the following testimony, which we state here as found in the brief of counsel for the appellant: Walsh, the owner, testified that the heifer was missed from his immediate range about the 1st of May, 1879, and he learned from J T. Plumley that she was in his range, about four miles from his (Walsh's) house. * * * The heifer was known to J. T. Plumley; it was from him (Plumley) that he (Walsh) first learned she was in his (Plumley's) range. J. T. Plumley testified that on Sunday, May 4th, the defendant came to his (Plumley's) house. Before they (Bud Plumley and defendant) left the witness's house, he told Brown and his son, if they would go, he wanted them to look out for Mr. Hardin Walsh's yearling, and if they saw it, to let him know where it was, as Mr. Walsh had asked him (the witness) to keep an eye on it. The witness says he also told them that, in penning their cattle, if they should see the yearling, and it was convenient to do so, to put it in a pen and notify him (the witness). On the following Tuesday, May 6, 1879, Brown (the defendant) came to the house of the witness. * * * Before he left, he (the witness) described, as before, the Hardin Walsh yearling, and made request as before.

The legal principles involved in the issue raised by the testimony are found in art. 727 of the Penal Code, as follows: " The taking must be wrongful, so that if the property came into the possession of the person accused of theft,

by lawful means, the subsequent appropriation of it is not theft; but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offence of theft is complete.''

To our minds, the questions as to whether the defendant obtained the possession of the animal charged to have been stolen from J. T. Plumley, under authority from Walsh, the owner, with an intent to deprive the owner (Walsh) of the value thereof, and to appropriate the property to the use and benefit of the persons taking it, and whether the animal was so appropriated or not, so as to render that manner of taking theft within the terms of the law, were fairly submitted to the jury by that portion of the general charge of the court set out above. And whether the defendant took the animal charged to have been stolen, under the belief that Bud Plumley had a right to control the animal, and took it into possession at the request of Bud Plumley, or not, was fully submitted to the consideration of the jury by the charge given by the court at the request of the defendant's counsel. We cannot say that a suitable charge was not appropriate, though the testimony be slight and unsatisfactory. The issues arising upon the two theories invoked by the defendant's counsel were, first, that the animal had been obtained from J. T. Plumley in good faith, and without fraudulent intent; and, secondly, that this appellant had obtained possession of the animal from Bud Plumley under the belief that he (Bud Plumley) had authority, derived from the owner, to control it. We are of opinion that the law arising upon these two issues was fairly submitted to the jury by the charge of the court. These are, to our minds, the vital issues in the case as made by the facts in evidence.

The first charge asked by the defendants and refused by the court, though in the main correct as an abstract legal proposition, was not appropriate in the present case, because

not warranted by the evidence. The testimony does not stop with showing that the defendant, not being present at the commission of the offence, simply advised, commanded, or encouraged others to commit it. If the testimony had carried the defendant no further in the perpetration of the crime than assumed in the charge refused, then, indeed, the defendant would only have been guilty as an accomplice, at most, under art. 79 of the Penal Code. *Vincent* v. *The State*, *ante*, p. 46. But the evidence does not stop here, as we find it set out in the transcript, and hence the charge as asked was not applicable to the proofs, and therefore the court did not err in refusing to give it to the jury.

The second charge asked and refused was rendered unnecessary by the clause given in the general charge, with reference to the supposed authority of J. T. Plumley to control the stolen animal. The judge having given to the jury a suitable charge as to the issue involved, he was not required to repeat the charge at the request of the defendant. *Proffit* v. *The State*, 5 Texas Ct. App. 51; *Pocket* v. *The State*, 5 Texas Ct. App. 552. The charge given by the court was a more accurate statement of the law, and better adapted to the proof, than that asked by the defendant's counsel. The charge of the court on this subject, which we deem applicable to the evidence, was given in connection with that portion of the charge relating to principals, which is to the effect following: "All persons are principals who are guilty of acting together in the commission of an offence; and when an offence is actually committed by one or more persons, and others are present, and, knowing the unlawful intent, aid by acts or encourage by words or gestures those actually engaged in the commission of an offence, such persons so aiding and encouraging are principal offenders, and may be prosecuted and convicted as such; and any person who advises or agrees to the commission of an offence, and who is present when the same is committed, is a principal thereto, whether he aid

or not in the illegal act done." This charge is in substance, and very nearly in the exact language of arts. 75 and 78 of the Penal Code, and was applicable to the facts proved on the trial.

The third and remaining charge asked and refused is, we are of opinion, when taken in connection with the reasons given by the judge for refusing to give it, a matter of but little moment anyway. It is not certain that any of the testimony relating to the theft of other cattle than the animal charged in the indictment was not admissible and proper, as bearing on the question of guilty knowledge and intent on the part of the defendant with regard to the particular animal of the theft of which he was accused, or that the charge asked, in the form asked, was correct as a principle of law. And whilst we do not say it would have been improper to give an appropriate charge, which would have properly informed the jury as to the extent to which the testimony should be applied, still, as with reference to the facts, it appearing that the particular animal charged to have been stolen was so often found in company with others claimed to have been stolen, and in charge of the persons, including the appellant, charged with the theft, we see no applicability of the charge to the evidence, or that the court was required to give it to the jury.

We are of opinion the charge of the court gives to the jury clear and appropriate instructions as to the law applicable to every issue raised by the evidence, and that all the law applicable to the case, as made by the evidence, was fully and fairly charged by the court in its general charge and in the special instruction given at the instance of counsel for the appellant. These issues, thus fairly submitted by the court, have been determined by the jury against the appellant, and we cannot say that the testimony is not amply sufficient to warrant the jury in coming to the conclusion that this appellant, and others with whom he was acting, whether he had authority to take up the animal

originally or not, took possession of it when they did with a fraudulent intent to deprive the owner of its value, and to appropriate it to his and their own use and benefit, and had in fact so appropriated it at the time he and they were arrested, and having it in possession, and avowing, agreeably to the testimony, an intention to butcher it. The fraudulent intent in taking possession of the animal seems to have been fully proved, and the intent to appropriate is not without evidence to support it.

Believing that the defendant has been fairly tried and lawfully convicted, the judgment must be affirmed.

*Affirmed.*